# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSEPH P. BARD, | ) | |
| *Plaintiff* | ) ) ) | |
| v. | ) ) | No. 1:10-cv-220-JAW |
| MICHAEL J. ASTRUE,<br>*Commissioner of Social Security,* | ) ) ) ) | |
| *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of low back pain due to degenerative disc disease of the lumbar spine, depression, obesity, and borderline intellectual functioning, Finding 2, Record at 22; that he did not have an impairment or combination of impairments that met or medically equaled any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 3, *id.*; that he retained the residual

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) and was able to lift and carry 10 pounds frequently and 20 pounds occasionally, sit for at least six hours in an eight-hour workday, stand for at least six hours in an eight-hour workday, walk for at least six hours in an eight-hour workday, and balance, stoop, kneel, crouch, crawl, and climb occasionally, and was capable of understanding, remembering, and carrying out simple job instructions and interacting with the general public occasionally, Finding 4, *id*. at 23; and that, considering his age (32 years old, defined as a younger individual, as of the alleged onset date), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 26-27; and that he, therefore, had not been under a disability since March 1, 2005, his amended alleged onset date of disability, Finding 10, *id*. at 28.[2] The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform

---

[2] The administrative law judge mistakenly described March 1, 2005, as the date the plaintiff's application had been filed. *See* Finding 10, Record at 28. It is, instead, the amended alleged date of onset of disability. *See id*. at 19. Although I have corrected the error in my recitation of the administrative law judge's findings, nothing turns on the discrepancy.

work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2 and 3 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 3, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals the Listings. 20 C.F.R. § 416.920(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listed impairment, the claimant's medical findings (*i.e.*, symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 416.925(a), 416.928. To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings." *Id.* § 416.926(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. *Id.* § 416.926(b).

## I. Discussion

The plaintiff complains that the administrative law judge erred in (i) failing to find that he suffered from a severe impairment of short bowel syndrome, (ii) failing to find that he met Listing 12.05C, and (iii) relying on vocational expert testimony given in response to a hypothetical question that omitted any limitations stemming from short bowel syndrome. *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 17) at 1-5. I find no reversible error and, accordingly, recommend that the decision of the commissioner be affirmed.

### A. Listing 12.05C

Listing 12.05 provides in relevant part:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05.

As the plaintiff points out, despite the existence of one IQ score falling within the parameters of Listing 12.05C, the administrative law judge failed to consider whether he had a combination of impairments meeting that subsection, analyzing only whether he had a combination of impairments meeting Listing 12.05D. *See* Statement of Errors at 2-4; Record at 23. Nonetheless, in the circumstances presented, any error was harmless.

The record contains three sets of IQ scores from tests administered in 1996, 2004, and 2006. *See* Record at 300 (May 4, 2004, psychoeducational evaluation of Adrienne J. Butler, Ed.D., assessing plaintiff with verbal IQ score of 74, performance IQ score of 80, and full-scale IQ score of 75), 335 (May 22, 2006, report of Donna M. Gates, Ph.D., assessing plaintiff with verbal IQ score of 70, performance IQ score of 84, and full-scale IQ score of 75), 499 (June 1, 1996, DDS report of Willard E. Millis, Ph.D., assessing plaintiff with verbal IQ score of 72, performance IQ score of 78, and full-scale IQ score of 73). The plaintiff relies on Dr. Gates' finding of a verbal IQ score of 70. *See* Statement of Errors at 3.

As counsel for the commissioner pointed out at oral argument, all three examining experts diagnosed the plaintiff with borderline intellectual functioning rather than mental retardation. *See id*. at 305, 336, 499. The record also contains two reports in which nonexamining Disability Determination Services ("DDS") mental health experts considered, with the benefit of Dr. Gates' report, whether the plaintiff's impairments met any of the mental health listings. *See id*. at 340-52 (Psychiatric Review Technique Form ("PRTF") completed on June 6, 2006, by Brenda Sawyer, Ph.D.), 440-52 (PRTF completed on April 5, 2007, by Scott W. Hoch, Ph.D.). As counsel for the commissioner also noted at oral argument, neither DDS expert found that the plaintiff had a combination of impairments meeting Listing 12.05C. *See id*. at 344, 444. Indeed, neither considered it necessary even to *assess* whether the plaintiff had impairments meeting that listing. *See id*.[3]

In the face of this substantial evidence that he did not meet Listing 12.05C, the plaintiff argues that:

---

[3] In addition, a third DDS nonexamining expert, John Gambill, M.D., concurred that the plaintiff did not have a combination of impairments meeting any mental health listing. *See* Record at 458-59 (Medical Consultant's Review of Psychiatric Review Technique Form completed on April 9, 2007, by John Gambill, M.D.).

1. The administrative law judge was *required* to credit the lowest of the conflicting valid IQ scores, the verbal IQ score of 70 set forth in Dr. Gates' report, which meets the first requirement of subsection C. *See* Statement of Errors at 4 (citing, *inter alia*, *Muncy v. Apfel*, 247 F.3d 728 (8th Cir. 2001); *Velardo v. Astrue*, Civil Action No. 07-1604, 2009 WL 229777 (W.D. Pa. Jan. 29, 2009); *Ray v. Chater*, 934 F. Supp. 347 (N.D. Cal. July 23, 1996)).

2. The administrative law judge found that the plaintiff suffered from several additional severe physical impairments, each one of which constituted "an additional and significant work-related limitation" for purposes of the second requirement of subsection C. *See* Statement of Errors at 3.

3. To the extent that a claimant is required to show, by virtue of the "capsule," or definition, section of Listing 12.05, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22[,]" Listing 12.05, this court has adopted a rebuttable presumption that a person's IQ remains constant throughout life. *See* Statement of Errors at 4; *see also, e.g., Mace v. Astrue*, Civil No. 08-14-BW, 2008 WL 4876857, at *3 (D. Me. Nov. 11, 2008) (rec. dec., *aff'd* Dec. 24, 2008). According to the plaintiff, that presumption is not rebutted here. *See* Statement of Errors at 4.

On these bases, the plaintiff seeks remand with instructions to award benefits or, in the alternative, remand for further proceedings. *See id*. at 5.

At oral argument, counsel for the commissioner rejoined that: (i) to the extent that the administrative law judge deemed the Gates IQ scores "valid," he found them valid indicators that the plaintiff had borderline intellectual functioning, not that he was mentally retarded, (ii) caselaw holding that an administrative law judge must credit the single lowest IQ score

among *different* sets of tests is wrongly decided, and (iii) this court has misconstrued the capsule requirement in a manner that relieves claimants of the burden of proving not only low IQ but also deficits in adaptive functioning. I find the first of these arguments dispositive in the commissioner's favor and, hence, do not reach the others.

As a general proposition:

> The regulations and case law are clear that an ALJ may reject the results of an IQ test which are shown to be "invalid." In arriving at his determination of whether an IQ score is valid, i.e., the score is an accurate reflection of a claimant's intellectual capabilities, the ALJ is to consider the entire record before him. Test results may be considered invalid where there is evidence that the claimant was malingering or deliberately attempting to distort the results during the test administration or when the conditions under which the test was given could have negatively affected the scores. Similarly, test results may be deemed invalid where the IQ scores are inconsistent with the claimant's prior educational or work history, daily activities, behavior, or other aspects of his life.

*Velardo*, 2009 WL 229777, at *8 (citations, footnote, and internal punctuation omitted). *Accord Plourde v. Barnhart*, No. 02-164-B-W, 2003 WL 22466176, at *4 n.4 (D. Me. Oct. 31, 2003) (rec. dec., *aff'd* Nov. 18, 2003) ("[I]t is appropriate for an administrative law judge to consider the record in its totality (including evidence of the claimant's functioning), in assessing the validity of a stated IQ score.") (citations omitted).

At oral argument, the plaintiff's counsel argued that the raw score itself, not the label "mentally retarded," controls for purposes of Listing 12.05C. Nonetheless, it is clear that an administrative law judge retains discretion to determine whether IQ test results validly reflect a claimant's intellectual capabilities. *See, e.g., Velardo*, 2009 WL 229777, at *8. In this case, in finding that the plaintiff's IQ test results correlated with borderline intellectual functioning, *see* Record at 25, the administrative law judge implicitly found that they did not validly correlate with mental retardation. That finding, in turn, was supported by every expert opinion of record, including the opinion of Dr. Gates, who derived the score on which the plaintiff relies. *See*

7

Record at 336 (conclusion of Dr. Gates, after considering, *inter alia*, plaintiff's history and mental status examination as well as IQ test scores, that he "does not appear to have any mental health limitations that would preclude him from working. He is functioning in the borderline range of intellectual ability.").

Any error in failing to explicitly consider whether the plaintiff's impairment(s) met Listing 12.05C hence was harmless.

### B. Short Bowel Syndrome

The plaintiff also argues that the administrative law judge erred in failing to address the question of whether his short bowel syndrome constituted a severe impairment. *See* Statement of Errors at 1-2; Record at 22. He offered evidence that the condition constituted a medically determinable impairment, *see id*. at 464-67, claimed in a pre-hearing brief that it was among his severe impairments, *see id*. at 271-72, and testified at hearing concerning its effects, *see id*. at 48-49.

Nonetheless, this error, as well, is harmless. Assuming, without deciding, that the administrative law judge should have deemed this condition a severe impairment, the plaintiff points to no evidence that such a finding would have been outcome-determinative. *See* Statement of Errors at 2; *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim."). His representative at his hearing could have, but did not, avail herself of the opportunity to inquire of the vocational expert whether the symptoms of short bowel syndrome described by the plaintiff would have had an effect on a person's ability to perform the jobs at issue. *See* Record at 61-65; *Jones v. Astrue*, No. 1:10-cv-179-JAW, 2011

WL 1253891, at *7 (D. Me. Mar. 30, 2011) (rec. dec. *aff'd* Apr. 19, 2011) (claimed Step 2 error harmless when plaintiff acknowledged that there was no vocational expert evidence indicating that asthma-related limitations would have precluded either job on which administrative law judge relied).[4]

The success of the plaintiff's claim of error at Step 5 error hinged on the success of his assertion that the administrative law judge erred at Step 2. *See* Statement of Errors at 4-5.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of June, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] At oral argument, the plaintiff's counsel stated that, in his experience, a need to use the bathroom frequently can preclude the performance of certain jobs, for example, flagger and production-line jobs. However, as he acknowledged, his experience in other cases does not constitute evidence in this case.